Case number 13-7150, Samuel Dukore et al. Appellants v. District of Columbia et al. Mr. Light for the appellants, Ms. Anderson for the appellees. Good morning, may it please the Court. Good morning. The primary issue in this case is whether two protesters, whether the police had reasonable, whether the police had a reasonable belief that they had probable cause to arrest two protesters for violating an obscure District of Columbia regulation, an obscure District of Columbia regulation which prohibits setting up a camp or temporary place of abode in a  I'd like to begin by looking at the plain meaning of those terms. Did they give a notice to the people before they arrested and get out of here or were they busted? They were given notice, that's correct. Right, that's what I thought. And the question involved being whether there was a clear violation of the Constitutional Act, wasn't there? Well, that's the question under the 1983 claim, and under the false arrest claim, there is no qualified immunity, so it's just a question of whether there's probable cause. And if we look at the plain meaning of what those terms are, a place of abode, that's a resident, that's a home, that's somewhere you live. And there's no evidence that these individuals who are participating in a protest were attempting to live in that tent. What time was it? The complaint does not specify, but it was in the evening, sometime after 10 p.m. And they were in the tent? They were in the tent. Thank you.  And if we look at the meaning of the term camp, that is if you say to somebody, I went camping this weekend, they wouldn't think you sat in a tent as part of a protest. They would imagine some of the initiative camping that are laid out, for example, in the Federal Park Police's Anti-Camping Regulation, which is 36 CFR 7.96i, which lists, for example, some things like preparations to sleep, sleeping activities, storing personal belongings, making a fire, digging earth, those sorts of things which are characteristic of camping. None of those things were present. Here we have an empty tent, which the individuals were simply sitting in as part of their protest. They had only been there for a matter of minutes. This is not a case where... The statute doesn't require you to actually be camping. You're setting up a camp. Setting up a camp. So if it turns out that later the individuals are determined to be camping, that person who set up the camp, even if they weren't the one who was camping... Surely you don't have to wait until later. If someone's setting up a camp, then that violates the statute, does it not? It would. So if they were... So... Because it doesn't matter if we get to the point of actually setting up, you know, your Coleman stove and cooking eggs or anything, as long as you're setting up the tent. The first thing a lot of people do when they set up camp is put up a tent. Well, it was a first and last thing. This is not a case where, you know, they had a truck and they were offloading various things to bring in. They hadn't yet completed that. There was no indication to any of the police officers that anything more was going to happen there than the simple tent. That was the beginning and the end. So what more would they have to have seen before it would have been qualified as a camp or setting up a temporary abode? What more is missing here? Well, there are any number of things that could have provided that indicia. For example, if they saw the individuals carrying backpacks, they were coming in with cooking equipment. Well, look, they're not... They're just planning to sleep overnight. They'll get breakfast at Starbucks or whatever. They don't plan to... This isn't out in the wilderness. They don't need backpacks. They just, as protesters, want to sit in there overnight. If they wanted to sit there all night, would you agree that would violate the statute? If they slept overnight, that would... What if they sat there overnight? If they were sleeping while they're sitting, perhaps. Why does it matter if they're sleeping or not? Well, sleeping is an indicia of camping. So they're sitting for a really, really long time. Your position then is that as long as they stayed awake, they could have stayed there all night, or would you agree that if they'd stayed there all night, it would violate the statute? It's a totality of the circumstances. So that would be one, if they were staying there overnight. I'm not giving you any other circumstances other than they have a tent and they're sitting there all night from, we'll say, 9 p.m. to 9 a.m. Does that violate the statute? If that was just how long the protest was, they were awake and just sitting there, I don't think that would violate the protest. Why is having to be awake? Why is that so essential to whether there's a probable cause or not? I don't think it's so essential. It's just one of the many indicia. If they were turning it on, they were not asleep, then it was not a violation? So if they sat there all night, let's go back to what Judge Millett asked. Yeah. If they sat there all night and didn't sleep, you say that's not a violation? But if they did go to sleep, it was a violation? If that's the only indicia that we're talking about was whether or not they're sleeping, that might be enough to push it across the line, looking at all of the circumstances. Here we don't even have that. There's no indication that they would have been sleeping overnight. The police were standing right there. Do you know how long the tents, because there were a whole bunch of tents, I guess, that were up. They told them to take them down and then put this one, the single one, back up. Do we know how long all those other tents were up before the order to disassemble them happened? That information is not in the complaint. Okay. But my understanding is that this all took place within a relatively short period of time, minutes, not hours. Is one of the circumstances police get to take into account that the name of the protest is Occupy? Could that factor into their decision that people plan to stay at a place for a certain more than a few minutes? I'm not sure if that was a fact that was known to the police or not. And if the name of the protest was not known to the police, then that's not something we would have. How far do we have to withdraw from reality? They were the declared Occupy movement at the time, and I think you even claim there's a retaliatory motive here because they knew they were the Occupy movement. They came in here and said they didn't know they were Occupy. Well, Your Honor, the Occupy movements were taking place at McPherson Square and Freedom Plaza. This was not in any of those locations. This was on a sidewalk in front of a bank. Okay. It's coincidental to all the Occupy movements that they were doing the same thing at the same time. Well, that's not in the complaint one way or the other anything about the Occupy movement. Whether they took on that name or not, Occupy has a variety of projects that do not necessarily relate to sleeping. So Judge Santel mentioned your retaliatory arrest claim, right? Yes. I have two questions about it. One is maybe I missed it, but the district court didn't address it, and I didn't see any place you raised it in the district court. Was there a reason you didn't raise it in your opposition to the motion to dismiss, or did you? I believe that we did raise it. It might not have been as explicit as we did in our brief in this court, but there was clearly a— I know you raised it here. I'm curious about what strategy led you not to raise it there because the district court never addressed it, right? The district court mentioned it, but it didn't address the issue. Did it? The court addressed the First Amendment, not specifically the retaliatory arrest portion of it. That's what I asked you. I asked you about the retaliatory arrest part of the case. That was my question. And what the court needs to look at is whether the complaint, whether the facts in the complaint would support that claim. And I was just asking you the simple question about whether I missed it and you did raise it, or if you didn't, what was the reason why you didn't argue it there but you're arguing it here? I'm curious. I don't think that there's anything you missed, Your Honor.  Counsel, to go back to where you said it's not in the complaint but they're the Occupy movement? There's a reference to it being Occupy. My issue was— Paragraph 10, 11, 12, 13, 14. Yeah, it mentions it. My issue was whether the police—  It's just not true that it's not in the complaint. I didn't say it wasn't in the complaint. I said it wasn't whether—the question was whether the police— The question had been whether the word Occupy should suggest the place that they meant to stay there, and then you said that it wasn't in the complaint that they're part of Occupy, that the Occupy movement was in two other places and they were over here, and your complaint actually has paragraph after paragraph after paragraph reciting Occupy. Maybe I wasn't clear, Your Honor. What I was saying is not in the complaint is that the police didn't know that it was— The complaint says the tents clearly identified the protest as part of Occupy D.C. in paragraph 20, so how could the police not know if the tents clearly identified the protest as part of Occupy D.C. and larger Occupy movement? That's paragraph 20 of your complaint. I'm sorry. I must have been mistaken about that. That's my fault. So the government—the district's position here on the retaliatory arrest claim is qualified immunity, which raises the question what— can you cite a case that clearly establishes a First Amendment right to be free from a retaliatory arrest supported by probable cause? Well, Your Honor, this Court's—the line of Hartman v. Moore decisions had addressed that. When the Supreme Court— Those are retaliatory prosecution cases. This is a retaliatory arrest case. So you need to find a case which says that you have a First Amendment right to be free from a retaliatory arrest based on probable cause. Otherwise, they're entitled to qualified immunity, aren't they? Well, Your Honor, I think that it's been clearly established that a retaliatory action is in violation of the First Amendment without regard— Based on probable cause, because assume I think that there is arguable probable cause here. Assume for purposes of my question that I think the police had arguable probable cause, because that's the standard, right, under Moore v. Hartman, arguable probable cause. So assume for purposes of my question that they had that. So you, therefore, need to defeat their claim of qualified immunity. You need a case which says you have a constitutional right to be free from retaliatory arrest based on probable cause. Well, I think this Court in the Trudeau v. FTC case established a general—generally the elements for any type of retaliatory treatment in violation of the First Amendment. I don't think we need to find a case which each particular type of retaliatory arrest is established. Right. That's your best case, then? So if you're going to win, you're going to win on that case. Do you have any others to cite for me? I can't think of anything off the top of my head which— So it's Trudeau. If we don't agree with your reading of Trudeau, then do you concede that they are entitled to qualified immunity? I believe that the Hartman v. Moore decision, I understand it was retaliatory prosecution. I think it sufficiently gives notice that a retaliatory arrest— Well, actually, the footnote—you're talking about the 2011 one? Right? Right. That has a footnote 8, which says it's not resolving the question of—at all. It doesn't need to resolve the question. Well, I guess it wasn't at issue in that particular case. But that's my point. You need—given that footnote, how could it possibly be clearly established if we've already said we're not going to address the question? Well, I guess my position is just that that specific type of retaliation doesn't need to be specifically addressed. Okay. I appear to have gone over my time. Do you have anything else? No. Okay. Thank you. Good morning, Your Honors. May it please the Court, Stacey Anderson on behalf of the District of Columbia Defendants. Your Honors, we've raised two issues in this case. First one dealing with the Court's jurisdiction as a threshold issue, and then, of course, addressing the merits. I'm happy to discuss the jurisdictional issue, or if the Court prefers, I can just focus on— I have a question about your jurisdictional position. If it's not a final judgment, does that mean you wouldn't have been able to cross-appeal the conversion ruling if you wanted to? I think that's correct, Your Honor, that it's not final as to— It's not final as to one party. It has to not be final to the other. Wouldn't that be a bit problematic? I don't think so, Your Honor. Imagine you wanted to appeal it. When would you ever get to appeal it? I hadn't thought about that, Your Honor. But I think that if the District Court's order does not disclose all the facts, if there's not a final judgment in the case, the District is left to wait until there is a final judgment to appeal. When would there be a final judgment in this case? Everything was dismissed. Let's just assume you chose not to. That's certainly—you're right. Let's assume you wanted to appeal that conversion claim. Everything else is dismissed. There's not—this Court's done with this case. When are you ever going to be able to appeal that? Well, I'm assuming—well, I guess we wouldn't have an opportunity in those instances. It was dismissed without prejudice. I assume our opportunity to challenge it would be if they filed— That claim wasn't dismissed without prejudice. I'm sorry. The conversion claim. I'm sorry. It was dismissed without prejudice. It was the false arrest claim that the Court ruled upon, finding that it's probable cause determination foreclosed. So— But that couldn't be—without prejudice was with respect to the common law claim, right? Yes. Without a federal claim, that—I mean, that can't be refiled in federal court. Not in federal court, correct. Well, that's my point. This was, from the point of view of federal court jurisdiction, in all respects, a dismissal with prejudice, right? Because there's no way that case can come back.  So isn't it different from Ballou? I don't believe so, Your Honor. Well, what about the distinction I just made? Isn't it true that the district court dismissed without prejudice at the request of plaintiffs so that they could file their common law claim in superior court? And without a federal claim, they can't refile that in federal court, right? So isn't it effectively with prejudice? I suppose so, Your Honor. But keeping in mind, of course, that the request here on appeal is that they be given the opportunity to, in fact, rebring that claim in the event of a remand. So it's— That's always the request, right? If they win the appeal, they're back in court on everything. You're right. You're right, Your Honor. Okay. But I don't think it's distinguishable from Ballou, and I don't think it's particularly distinguishable from Robinson Reeder, where we had a Title VII claim and a common law defamation claim where the Title VII claim was resolved and the common law defamation claim was dismissed without prejudice. And, again, in Robinson Reeder, the court found that, in fact, the court lacked jurisdiction. The focus is not— Was the claim in that case—and this is an honest question, I don't know— was the claim in that case only before the court under a suspension jurisdiction from a federal claim? Yes, the Title VII claim. It was tied to the— Title VII is a federal claim itself. Right, but the defamation claim was linked to— Only there. Right. It was connected with that claim. It was not separately. Now, was that our case? Yes, Robinson Reeder was this court's case, yes, Your Honor. And, again, I think that is much more factually—or more factually analogous to the case we have here. And, again, this court has repeatedly indicated that you look at the nature of the dismissal. Then why isn't the nature of the dismissal here, though, just exactly what Judge Taylor posited? It can't bring that case back here. I understand that, Your Honor. It came here only by pending jurisdiction. Isn't it for purposes of—as far as the practical effect on jurisdiction, isn't it— I understand the practical effect. You're correct, Your Honor. And, again, jurisdiction often turns on technicalities. And the court perceives this as simply a technical violation. And, nonetheless— I thought your point was that they may be able to bring it back here if the other side were to win the appeal and go back. So they're actually sort of just hanging there in limbo. And we don't know if they're going to try to get them back into federal court or actually go to superior court with them. Is that right? Or have they filed them in superior court already? They have not filed them in superior court, Your Honor. Again, their request here on appeal is that they're going to be reinstated in federal court in the event of a remand. So I do believe the authority of side-judgment briefs, both from this court and other jurisdictions involving similar situations, is consistent with the notion that the court does lack jurisdiction as this appeal hasn't been taken from a non-final order. With respect to the merits, the district believes that each of Appellant's claims fails for the simple reason that there was arguable probable cause here for arrest. The officers in this case had sufficient factual information before them to demonstrate or to give rise to a belief, a reasonable belief, that the plaintiffs intended to camp or establish— How do protesters know or police officers know where the line is between using a tent as part of a First Amendment protest and using it, I guess, long enough in a manner that's going to violate the no camping regulation? Is there anything that gives guidance on what the delta is between those two? There's nothing specific in the regulation that would, Your Honor. I think a significant fact in this case was the protesters actually sitting inside the tent and refusing to leave the tent. But if it had been middle of the day and it's really hot, they just went inside for an hour to cool off, would that be enough for violating the tent regulation? Again, I think they're using the tent as a shelter. Yes, I don't think there's a specific time when they're using the tent. Oh, so you can just never go inside the tent? As soon as they go inside the tent? No, again, I'm just—on the facts of this case, I think that's a significant factor. You can camp without a tent. I think that's, you know, quite possible. No, but they have a tent. They want to use a tent as a part of their protest. It's just part of their—we aren't going to second-guess that that's part of their message. Absolutely. And I take it your position is as long as they're outside the tent, that's okay, but if they go inside— No, I just think the fact that they went inside in this case was a fact that— No, that's a fact you're using. I'm trying to ask what happens, just where this line is, because I think the law also recognizes you can use a tent as part of a legitimate protest. And so where is that line or what notice did anybody have as to what that line between protesting and camping is? I think the officers gave notice in this case of their belief that they were violating the law by giving them three opportunities to leave the tent. Is there a clear— Whether they gave them three opportunities to leave or not sort of begs the question of whether there was actually a violation going on. I don't care if they told them to leave. If they were actually engaged in a legitimate First Amendment protest, it doesn't help that they said stop doing that three times. Right. Your Honor, I don't think that, again, there's a clear definition within the regulations that would say doing X, Y, and Z automatically constitutes a violation. The officers are in a position where they are at a scene where things are unfolding and they have this regulation and they're interpreting it. It sounds like all the discretion is in the—it just sounds a little troubling that if the police get to decide when you're stopped speaking and start violating things, there's absolutely no guidance for the police officers at all under a pretty vague statute. I think the common understanding of what camping is, again, on the facts of this case— I don't know what the common understanding of camping is in this context. Again, if it's the middle of the day and I'm going in just to cool off, I guess I wouldn't— my common understanding is that wouldn't be camping, but yours is that it would. Well, again, there's more facts here. I know there's more facts here. I'm just trying to understand. I can't—I don't have a definitive answer for you, Your Honor, as to whether or not that would in and of itself, with no additional facts, be sufficient to violate the regulation. But the question here is whether or not the officers, based on the totality of the circumstances known to them, had a reasonable, arguable basis to believe that, in fact, the regulation was violated. And I believe that they did. And there's several facts, not just the presence of the tent, the admissions and the complaint that the protesters' intent in this case was to physically, actually, literally occupy the space in front of the Merrill Lynch building. That, in and of itself, is an indication that they've agreed, that they've met two of the three elements of the statute. They set up a tent, and they intend to occupy it for a lengthy period of time. The fact that the tents clearly identified them as— Well, I think you're adding the lengthy period of time. They didn't say how you can occupy something for a very—I'm occupying this chair right now. It doesn't tell how long I'm doing that. Well, again, I think if you look at the totality of the complaint and you put it in the context of the Occupy movement and their admitted desire to take over that portion of the public space for the protest for a period of time, I think that that's a fair inference, that it was not simply a two-hour stay, as Your Honor suggested might be, when you're trying to get out of the sun. It was in the middle—it was at night, late at night. They were inside the tent. And, again, the officers did have information regarding other protesters' activities with respect to this movement, with which these protesters clearly identified and aligned themselves. And so I think all of that— I was a little unclear, then, as to your position as to what the— how it was appropriate for the police to use their knowledge of other protesters at other locations and to impute it to these individuals, because you seem to be kind of having your cake and eat it, too, because there's problems, obviously, with saying that someone's violating the law because someone else is doing something different somewhere else away. On the other hand, you know, it's Occupy. You've got Occupy here. You've got it there. Right. It was—again, the arrests in this case were based on the individual's conduct, which was setting up the tent, sitting in the tent late at night. The fact that other members of the movement also used their tents for camping is certainly a fact that the officers could have taken into account. It's not imputing guilt by association. It's rather simply an understanding that the tents have a dual purpose in this context, that they can be used as a symbol, expressive symbol, and they can also be used simultaneously as a tent for camping, which violates the regulation. And, again, the officers here gave three warnings. They didn't order the protesters to leave the vicinity of where they wanted to protest. They simply required them not to establish a camp through the use of tents. And that, I think, is a proper limitation on the First Amendment rights under district law and under the First Amendment. And the officers in this case, again, had reasonable, arguable, probable cause to believe that this was a violation. If the Court has anything else. Okay, thank you. Did Mr. Light have any more time? You can take one minute, Mr. Light, if you'd like it. Thank you, Your Honor. There's just one additional thing I wanted to point out, which is that the orders by the police officer were not don't camp in here, don't set up a place of residence in here. It was take down the tent. You can no longer use that as part of the protest. And that prop was an essential part. And, therefore, that order violated the First Amendment. Your Honor, any questions? Okay, thank you. Thank you. The case is submitted. Thank you both.
judges: Tatel, Millett, Sentelle